UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CONCEPTION BUTCHARD and
MARCO BUTCHARD,

        Plaintiffs,

vs.                                        No. CV 11-0563 WPL/GBW

COUNTY OF DONA ANA, et al.,

        Defendants.

**ORDER**

      This matter comes before me on three motions to dismiss.  Plaintiffs Conception Butchard and Marco Butchard have brought this action against Defendants Lieutenant Paul Nevarez, Deputy Paul Telles, and Deputy Scott Bayles (collectively "Defendants")[1] of the Dona Ana County Sheriff's Office ("DASO") for alleged civil rights violations. (Doc. 1 Ex. A.) Defendants filed motions to dismiss Counts 1 and 2 against them (Doc. 24; Doc. 25) and dismiss all state law claims (Doc. 22; Doc. 23). Telles has also moved to dismiss Counts 3, 4, and 5 against him. (Doc. 26; Doc. 27.) Plaintiffs conceded the motion to dismiss Counts 1 and 2 (Doc. 33), but they object to the remaining motions (Doc. 34; Doc. 35; Doc. 36; Doc. 37). Pursuant to 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge, resolve dispositive matters, and enter a final judgment. Having considered the pleadings and relevant law, I grant Defendants' motions to dismiss Counts 1 and 2 and all state law claims, and I grant in part and deny in part Telles' motion to Dismiss Counts 3, 4, and 5.

---

[1] There are other Defendants in this action. When I refer to "Defendants" in this Order, I am exclusively referring to Nevarez, Bayles, and Telles.

## FACTUAL & PROCEDURAL HISTORY

C. Butchard and her adult son, M. Butchard, live together in a house in Las Cruces, New Mexico. (Doc. 1 Ex. A at 2.) On June 13, 2008,[2] C. Butchard heard a knock on the door; upon opening the door, she was confronted by "several [police] officers with their weapons drawn and pointed at her." (*Id*. at 3.) The officers repeatedly insisted that they enter her home, but C. Butchard refused them entry. (*Id*. at 3-4.) DASO Deputy Gonzalez[3] explained to her that they were looking for an individual whom C. Butchard did not know. (*Id*. at 3,6.) During this time, the officers continued to point their weapons at C. Butchard despite her request that they stop. (*Id*. at 4.) She told Gonzalez that she did not know the person for whom they were searching, that she was alone in the house, and that they could not come in. (*Id*.)

The officers persisted, and C. Butchard finally relented as a result of her anxiety. (*Id*.) They searched every room in her home and then walked out of her house "without any explanation." (*Id*. at 4-5.) After they left, C. Butchard, feeling anxious and nauseated, called her son. (*Id*. at 5.) M. Butchard left work to help his mother, and when he arrived at their home, he found her sick and in the bathroom. (*Id*.) She gave him Gonzalez's business card, and he called the phone number and left an angry message that contained profanity. (*Id*. at 5-6.)

---

[2] The complaint alleges that the incident occurred in 2007. (Doc. 1 Ex. A at 3.) Defendants' motions to dismiss believe this is a typographical error, and they state that the incident occurred in 2008. (Doc. 23 at 2 n.3; Doc. 25 at 2 n.3; Doc. 27 at 2 n.2.) Plaintiffs' response briefs also state the events occurred in 2008 (Doc. 35 at 4; Doc. 37 at 6), so I will use this date.

[3] Gonzalez gave C. Butchard a business card with his name before leaving her home. (Doc. 1 Ex. A at 5.) Plaintiffs included this individual in the suit, initially naming him as "FNU Gonzalez" in their complaint (Doc. 1 Ex. A at 1, 4), but they had difficulty identifying and serving him (Doc. 47 at 2). Defense counsel later discovered that there was an inconsistency between the business card, which reads "Deputy Gonzalez I," and the complaint, which reads "Gonzales." (Doc. 47 Ex 1.) I granted Plaintiffs limited discovery for the purpose of identifying Deputy Gonzalez. (Doc. 48.) In January 2012, Officer Jason Gonzales was served, but his counsel informed the Court that he spells his name "Gonzales." (Doc. 50.) I will use the spelling of the name as is appears on the business card, and I will leave the identity of Gonzalez for another time.

The next day, a documents technician for DASO listened to the message and forwarded it to Nevarez and Sergeant Buckingham.[4] (*Id.*) Several officers listened to the message over the next few days, and Nevarez eventually instructed Bayles to "take action." (*Id.*) Bayles listened to a tape recording of the message and drafted a criminal complaint charging M. Butchard with the use of a telephone to terrify, intimidate, threaten, harass, annoy, or offend anyone. (*Id.*)

On June 20, 2008, Bayles filed the criminal complaint in magistrate court, and the court issued a warrant for M. Butchard's arrest. (*Id.*) That day, Telles and an unidentified officer returned to the Butchards' home and knocked on the door. (*Id.*) C. Butchard came to the door and spoke with Telles. (*Id.*) He played the tape recording of the message and threatened that he would put M. Butchard in jail. (*Id.* at 6-7.)

M. Butchard returned home, and when he left his home later that day, Bayles was watching him. (*Id.* at 7.) Bayles notified Telles that M. Butchard had left the house, and Telles followed M. Butchard's vehicle, eventually pulling him over even though he had not committed a traffic violation. (*Id.*) Telles asked for M. Butchard's license and information and radioed in the information; the initial warrant check revealed no outstanding warrants. (*Id.*) Telles then radioed Bayles to confirm that he had obtained a warrant for M. Butchard and upon confirmation from Bayles, Telles arrested M. Butchard. (*Id.*)

M. Butchard was convicted in magistrate court of using the telephone to harass on May 5, 2009, but the conviction was overturned in state district court on December 15, 2009. (*Id.* at 8; Doc. 37 at 8.)

---

[4]It is unclear why a documents technician received the message and not Gonzalez.

3

On May 19, 2011,[5] the Butchards filed a complaint for damages for civil rights violations in state court. (Doc.1 Ex. A.) C. Butchard brought her claims pursuant to 42 U.S.C. §1983, and M. Butchard brought his claims pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act ("NMTCA"). (*Id.* at 1-2.) Collectively, they allege the following causes of action: (1) "Unconstitutional Entry of Plaintiffs' Home"; (2) "Assault Upon and Seizure of the Person of Conception Butchard"; (3) "Violation of Marco Butchard's First Amendment Rights"; (4) "Illegal Stop and Seizure of the Person And the Vehicle of M. Butchard"; and (5) "Malicious Prosecution of M. Butchard." (*Id.* at 8-10.)

Former Defendant Doña Ana County ("the County") removed the case to federal court on June 24, 2011. (Doc. 1.) The County then moved for dismissal. (Doc. 5.) Plaintiffs conceded the motion (Doc. 19), and I dismissed the County with prejudice (Doc. 21). Defendants Nevarez, Telles, and Bayles filed three separate motions to dismiss (Doc. 22; Doc 24; Doc. 26), which are all presently me.

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. Without weighing the evidence, the court must evaluate whether it is plausible, and not merely possible, that the plaintiff is entitled to relief under the relevant law. *Ashcroft v. Iqbal*, 556 U.S. 662, --- , 129 S. Ct. 1937, 1950 (2009); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.

---

[5] There are two dates stamped on the Plaintiffs' complaint, May 19, 2011, and May 31, 2011. (Doc. 1 Ex. A.) Both parties state that the complaint was filed on May 19, 2011, so I will use this date. (Doc. 23 at 2; Doc. 37 at 6.)

2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n] -- that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quotations omitted). In considering Rule 12(b)(6) motions, courts must look within the four corners of the complaint, accept all well-pleaded factual allegations as true, and determine if the plaintiff is plausibly entitled to relief. *Ashcroft,* 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted).

While the complaint need not include "detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). The factual allegations must also suffice to "inform the defendants of the actual grounds of the claim against them." *Robbins*, 519 F.3d at 1248. The degree of specificity required depends on the nature of the complaint, but generally the complaint must specify the time, place, and person involved in the matter at issue. *Id.* (citations omitted).

### DISCUSSION

## I.    Motion to Dismiss Counts 1 & 2 against Nevarez, Telles, and Bayles

Defendants move to dismiss Counts 1 and 2 on the ground that the complaint does not assert facts which allege that they were involved in the related incidents. (Doc. 25 at 3.) Plaintiffs do not oppose this motion. (Doc. 33.) Accordingly, I grant Defendants' motion to dismiss Counts 1 and 2 with prejudice as to Telles, Nevarez, and Bayles.

## II.    Motion to Dismiss State Law Claims against Nevarez, Telles, and Bayles

Defendants also move to dismiss M. Butchard's state law claims. They claim that my previous order dismissing the County bars M. Butchard from asserting the same claims against them

under the doctrine of law of the case. (Doc. 23 at 4.) Alternatively, they argue that the statute of limitations has run. (*Id*. at 5.) The law of the case doctrine is not applicable here, but the statue of limitations has run, which preempts M. Butchard from bringing state law claims.

A.     *Law of the Case*

Under the doctrine of law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986). This doctrine has its limits, and it will "apply only to decisions on the actual merits." *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001). "[O]nly matters actually decided, explicitly or implicitly, become law of the case," and it is therefore "important to reconstruct the pertinent circumstances surrounding and informing . . . [the] previous decision." *Wilmer v. Bd. of Cnty. Comm'rs*, 69 F.3d 406, 409 (10th Cir. 1995).

In August 2011, I dismissed the County from the case. (Doc. 21.) As grounds for dismissal, the County argued that Plaintiffs failed to state a claim against the County under § 1983 and that the statute of limitations had run for all claims brought under the NMTCA. (Doc. 6 at 3-4.) Plaintiffs conceded the motion in a one page response (Doc. 19), and I entered an order dismissing the County without evaluating the merits of either argument (Doc. 21). Defendants now argue that this decision should bar M. Butchard from bringing the same state law claims against them. However, since Plaintiffs stipulated to the dismissal, I never evaluated the merits of  the argument regarding the statute of limitations. Absent a decision based on the merits, I will not apply the law of the case doctrine here.

B.     *Statute of Limitations*

Individuals bringing a claim under the NMTCA must do so within two years of the date of

the incident giving rise to the claim. N.M. STAT. ANN. § 41-4-15(A) (LexisNexis 2011).[6] In order to calculate when the statute of limitations has tolled, the Court must identify the date on which the alleged tort occurred. This is a simple task for two of M. Butchard's four state law claims.[7] Count 1, illegal entry into M. Butchard's home, occurred on June 13, 2008, and Count 4, illegal stop and seizure of M. Butchard, occurred on June 20, 2008. Plaintiffs filed this case on May 19, 2011, so the statute of limitations expired on both Counts 1 and 4. However, Counts 3 and 5 relate to the criminal prosecution of M. Butchard for his telephone voice message. The accrual of these claims is slightly more amorphous, since the prosecution occurred over a period of time. M. Butchard's free speech and malicious prosecution claims are inevitably intertwined, and he has already conceded that both claims accrued when he knew or had reason to know of his claim for malicious prosecution. (Doc. 37 at 7.) Accordingly, I only need to consider when his malicious prosecution claim accrued for the purpose of evaluating dismissal.

In New Mexico, state law does not require that the underlying criminal prosecution terminate in the plaintiff's favor in order to have a claim for malicious prosecution. *McDow v. Gonzales,* No. CIV 07-1266, 2008 U.S. Dist. LEXIS 108674, at *44 n.5 (D.N.M. Sept. 30, 2008); *Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009). Since the plaintiff need not prevail on the underlying criminal action, "the state statute of limitations begins to run as soon as the plaintiff knows of the facts on which he or she is basing the claim." *McDow*, 2008 U.S. Dist. LEXIS 108674, at *44 n.5. In *Mata v.*

---

[6] The statute of limitations for a § 1983 claim is governed by law of the state in which the alleged violation occurred. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Hardin v. Straub*, 490 U.S. 536, 538 (1989). In New Mexico, § 1983 actions are characterized as personal injury actions and are subject to a three year statute of limitations, not the two year statute of limitations under the NMTCA. *Wilson v. Garcia*, 471 U.S. 261, 265-66 (1985). All of Plaintiffs' federal claims were filed within the three year period.

[7] While Plaintiffs' enumerate five causes of action in their complaint, Count 2 is specific to C. Butchard. Since C. Butchard has only raised § 1983 claims and no state-law claims, I will not consider her claims here.

*Anderson*, the defendant police officer filed an amended criminal complaint charging plaintiff with several crimes, and a year and a half later the plaintiff was acquitted on appeal. 635 F.3d 1250, 1251-52 (10th Cir. 2011). The court held that a plaintiff knows or has reason to know of the facts substantiating a malicious prosecution claim on the day the criminal complaint is filed, so Mata's cause of action accrued on the date the defendant filed the amended complaint. *Id.* at 1253. Similarly M. Butchard was charged, arrested, convicted in magistrate court, and acquitted almost a year later. However, according to *Mata*, M. Butchard's prosecution and appeal are irrelevant to a statute of limitations analysis since his claim accrued the day Bayles filed the complaint.

M. Butchard argues that the continuing violation doctrine should apply to the accrual of a free speech claim (Doc. 37 at 7), but I disagree. The continuing violation doctrine is an equitable doctrine, under which "each overt act that is part of the violation . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *see also Ulibarri v. State Corr. Acad.*, 131 P.3d 43, 47 (N.M. 2006). If I applied this approach, each stage of the prosecution and appeal of M. Butchard would re-start the statutory clock.

M. Butchard argues that *Mata* supports his application of the doctrine (Doc. 37 at 7); yet, the *Mata* Court explicitly declined to consider whether the doctrine applies to a retaliatory-prosecution claim. *See* 635 F.3d at 1253. In fact, I could not find a single case in New Mexico in which the state applied the continuing violation doctrine to a claim brought under the NMTCA. Even if I were to look to federal law for guidance, the Tenth Circuit has never held that the continuing violation theory applies to § 1983 claims. *Brock v. Herbert*, 435 F. App'x 759, 763 (10th Cir. 2011) (unpublished) (citing *Holmes v. Regents of Univ. of Colo.*, 176 F.3d 488 (10th Cir. 1999) (unpublished); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)).

8

Furthermore, the application of the doctrine here would not serve its intended equitable purpose. This doctrine is typically used in employment discrimination cases alleging a hostile work environment.[8] *See generally AMTRAK v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the [hostile environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court."); *Ulibarri*, 131 P.3d at 47 (discussing application of the doctrine); *Charles v. Regents of N.M. State Univ.*, 256 P.3d 29, 34 (N.M. Ct. App. 2010) ("if one act contributing to a hostile environment claim occurred within the filing period, all acts creating the hostile environment may be considered.") In this context, the continuing violation doctrine makes logical sense because the plaintiff must demonstrate that a series of acts collectively constitute an unlawful employment practice, even though each isolated act may not be unlawful. *AMTRAK*, 536 U.S. at 117; *Ulibarri*, 131 P.3d at 47. The totality of the events justifies relief in these cases, so the legal cause of action continues to accrue as the hostile behavior unfolds. Comparatively, Title VII cases alleging unlawful hiring, firing, harassment, or a failure to promote are not eligible for the equitable tolling provision because each claim is grounded in a discrete act that is easy to identify. *Del. State College v. Ricks*, 449 U.S. 250, 257 (1980) (holding will not apply continuing violation doctrine when the unlawful employment practice is termination); *Ulibarri*, 131 P.3d at 47.

Unlike a hostile work environment case, a malicious prosecution claim does not involve a series of events. Under state law, the elements of malicious prosecution are the improper use of process in a judicial proceeding, motive, and damages. *Durham*, 204 P.3d at 26. To show improper process, the plaintiff need only demonstrate that the defendant filed a complaint without probable

_____

[8] Anti-trust law also uses this doctrine, *see Klehr*, 521 U.S. at 189, but I will not discuss its use here.

cause. *Id.* One discrete event can satisfy this element, so an extension of the continuing violation doctrine is not warranted.

Since I will not apply the continuing violation doctrine here, I need only know the day that the criminal complaint was filed in order to determine whether the statute of limitations has expired. Bayles filed the criminal complaint on June 20, 2008, so the statue of limitations tolled on June 20, 2010. Thus, I grant Defendants' motion to dismiss M. Butchard's state law claims with prejudice.

### III.   Motion to Dismiss Counts 3, 4, & 5 Against Telles

Telles moves to dismiss Counts 3, 4, and 5 against him. (Doc. 26; Doc. 27.) He argues that quasi-judicial immunity protects him from Count 4 (illegal stop and seizure of M. Butchard), and that Counts 3(First Amendment) and 5 (malicious prosecution) fail to state facts that demonstrate he was involved in the alleged incidents. (Doc. 27 at 3.)

#### A.   *Quasi-Judicial Immunity*

It is well settled that a defendant who is an officer of the court shares in a judge's judicial immunity when he executes the orders of that judge. *Moss v. Kopp*, 559 F.3d 1155, 1162 (10th Cir. 2009); *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990); *Valdez v. Denver*, 878 F.2d 1285, 1288 (10th Cir. 1989). Dubbed "quasi-judicial immunity," this protection applies to the execution of warrants. *Moss,* 559 F.3d at 1163. In order for quasi-judicial immunity to attach, the judge issuing the disputed order must have immunity, the officer executing the order must act within the scope of his own jurisdiction, the officer must only act as prescribed by the order, and the officer cannot obtain the order under which they claim immunity through bad faith. *Id.* at 1162, 1162 n.10.

Telles argues that he is protected by quasi-judicial immunity because he was executing a valid arrest warrant. Plaintiffs do not dispute that Telles has met the first three elements of the four pronged test for quasi-judicial immunity. However, they claim that he cannot meet the fourth prong

because he was involved in filing the criminal complaint and thus obtained the warrant for M. Butchard's arrest in bad faith. To support this assertion, Plaintiffs argue that the facts support a reasonable inference that he was involved in securing the warrant because he listened to the message, he "knew" that it did not support the criminal complaint, and he executed the warrant. (*Id* at 4.)

A review of the complaint reveals that Plaintiffs never alleged that Telles was involved in obtaining the complaint. Rather, the complaint alleges,

> Several officers listened to the message. A couple days later Lieutenant Nevarez called Deputy Scott Bayles to his office. He handed the tape to Deputy Bayles and told him to take action. Deputy Bayles listened to the tape recording and drafted a criminal complaint charging Marco Butchard with the "use of a telephone to terrify, intimidate, threaten, harass, annoy, or offend anyone" . . . .

 (Doc. 1 Ex. A at 6.) Telles is not mentioned. I cannot infer from the statement that "[s]everal officers listened to the message" that Telles was one of the officers and he had knowledge of the message, let alone that he participated in obtaining the warrant. Since Plaintiffs do not allege facts to support that Telles did not take part in obtaining the warrant, the fourth prong is met, and quasi-judicial immunity shields him from liability for the execution of the warrant.

However, this is not the end of the inquiry. In addition to addressing the legality of M. Butchard's arrest, Count 4 challenges the constitutionality of the initial stop and seizure of M. Butchard's vehicle by Telles. (Doc. 1 Ex. A at 10.)[9] A traffic stop is a seizure within the meaning of the Fourth Amendment. *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (en banc). To comport with the Fourth Amendment, the stop must be "based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment

---

[9]I note that neither Plaintiffs nor Defendants raised the issue of the actual stop in their briefs.

11

violation has occurred or is occurring." *Id.* at 787.

Plaintiffs' complaint alleges that when Telles pulled over M. Butchard he "had not committed any traffic offense." (Doc. 1 Ex. A at 7.) From this, I can infer that the complaint has sufficiently alleged that Telles did not have a valid reason to conduct a traffic stop and illegally seized M. Butchard and his vehicle. Therefore, I deny Telles motion to dismiss Count 4 against him.

B.      *Failure to State a Claim on Which Relief Can Be Granted*

The face of the complaint does not allege that Telles took direct action which violated M. Butchard's First Amendment rights or participated in malicious prosecution. However, Plaintiff asks the Court to deny Telles' motion to dismiss on the theory that Telles could have acted to intervene and prevent the violations. Because it is not clear that Telles could have taken any action to prevent the conduct alleged in Counts 3 and 5, I will grant his motion to dismiss these counts against him.

Liability under § 1983 requires that the defendant be personally involved in the alleged constitutional violation. *Foote v. Spiegle*, 118 F.3d 1416, 1423 (10th Cir. 1997). Courts interpret the meaning of "involvement" broadly. In the Tenth Circuit, it is clear that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008). This includes liability for the

> [P]reventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact . . . .

*Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (citations omitted).

Here, the question is whether Telles had reason to know that there was any constitutional

violation taking place, and, if so, whether he had a realistic opportunity to intervene. In *Weigel*, a law enforcement officer witnessed other officers use excessive force on the plaintiff. 544 F.3d at 1152-1153, 1153 n.4. In *Vondrak*, the plaintiff was handcuffed too tightly, and he repeatedly asked the defendant officer for help loosening the cuffs. 535 F.3d at 1209-10. In both of these cases, it is clear that the defendants should have known about the constitutional violations because they were present when the violations were taking place. Further, they also had realistic opportunities to intervene, by either stopping the officers using excessive force or adjusting the handcuffs.

Here, the complaint does not specify that Telles was aware of the tape or Bayles' decision to file criminal charges. Even if he did have knowledge, the complaint does not specify that Telles had any realistic opportunity to intervene and prevent the harm. It is worth noting that Telles is a Deputy, and he is of equal rank as Bayles and he is out ranked by Nevarez, a lieutenant. Even had he been aware of the decision to prosecute M. Butchard, it is not clear that he would have been able to prevent Bayles from filing the complaint.

Plaintiffs, possibly anticipating that I would find that they failed to state a claim against Telles with respect to Counts 3 and 5, suggest that I allow them limited discovery to "probe" the matter further. As support for this suggestion, they cite *Iqbal v. Hasty*, *490 F.3d 143, 158 (2d Cir. 2007)*, which held that a district court, in lieu of dismissing a case for failure to state a claim, has the discretion to grant limited discovery to discover facts in order to articulate a claim against senior government officials. Aside from the fact that this case is not binding upon the Court and is factually distinguishable, the Supreme Court recently overruled this case in *Ashcroft v. Iqbal*. 129 S. Ct. at 1953-54. In overruling the case, the Supreme Court directly rejected the Second Circuit's approach to limited discovery, holding "We decline respondent's invitation to relax the pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery. . . .

13

Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." *Id.* Likewise, Plaintiffs have failed to meet the pleading requirement under Rule 8 as to Telles' involvement in the allegations in Count 3 and 5. I cannot grant them additional discovery to remedy this error. However, I can dismiss the claims without prejudice so that, if discovery reveals any evidence to show Telles was involved in the underlying conduct supporting Counts 3 and 5, Plaintiffs may pursue an amendment to their complaint.

Plaintiffs have failed to state a claim against Telles as to Counts 3 and 5, but they have stated a claim against him for Count 4. I will grant in part and deny in part his motion, and dismiss Counts 3 and 5 against him without prejudice.

## CONCLUSION

For the foregoing reasons, I dismiss with prejudice Counts 1 and 2 against Nevarez, Telles, and Bayles, and I dismiss with prejudice all of M. Butchard's state law claims. I also dismiss without prejudice Counts 3 and 5 against Telles.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

14